The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good morning. We'll call 4-22-0447 Stephanie A. McNair, CAHO Appellant v. Aaron Ware Appellee. Counsel for the Appellant, please state your full name for the record. Donal R. Jackson Thank you. For the Appellee? Blake A. Mishler Very well. Thank you, Counselors. You may proceed. This case actually began about 2017 and the difficulty which brings us to the Appellate Court today is the fact that we can't get past the service of process in the case. In this case, there was a contract between Ms. CAHO and Mr. Ware for the sale and purchase of a home. And there was a problem with the sale and Ms. CAHO was sending multiple documents to Mr. Ware at a P.O. box that he maintained in the City of Peoria at the Post Office. In this case, the Court found that Mr. Ware credibly pled that he had not been served with any of the documents, notwithstanding the fact that part of his testimony was that when he received information from Ms. CAHO, he would traditionally just throw it away. He also claimed that he lived in Chicago at the time and therefore was not served with the process, yet he maintained a Post Office box in Peoria where notices were sent. The contract itself required that she only send the information to him through the Post Office box. The fact that he claimed he didn't receive it, receive information, is questionable as far as we're concerned, but the Court ruled in this case that he had so-called credibly testified that he had not been served with process in the case. So consequently, the Court dismissed the case and that brings us to the appellate court today. I think the general rule has always been that, well, first of all, let me say that someone appeared at the Sheriff's office with the Post Office card, with the card sent to his Post Office box, notifying him that documents were at the courthouse, at the Sheriff's office, which is in the basement of Peoria County Courthouse. And somehow, someone accessed his Post Office box, we believe it was him, and took that card to the Sheriff's office and asked for the documents. Of course, Mr. Warr's testimony was that it was not him, and they offered incredible testimony that someone else was posing as Mr. Warr and accessed his PO box. I don't know how that could have happened. Got the card from the Sheriff's department, took it, and got the documents. Mr. Jackson? Yes, ma'am. Good morning. How are you? Good, thank you. I know there are a number of issues involved in this case. I have a question with respect to one of them, and that is whether or not the default judgment that was entered here was void because the trial court granted an award in excess of the addamnum clause without prior notice to the defendant. So, if you can speak to, indeed, whether what was awarded, that is the warranty deed that was given to the plaintiff here, was more than she had originally asked for in her original suit without giving notice to the defendant. Well, our position is that the documents that he claimed that over the years he threw away, we believe included information about that in those documents. But we don't know because, according to his testimony, he didn't review any of the documents. He just pitched them when he got them from Ms. Ware. Well, we know that the initial prayer for relief sought an order for repair of the plumbing, reimbursement of the dumpster fees, etc. But there was a new motion, there was a motion for summary judgment that was asked for. And in that motion for summary judgment, I believe the relief there was that the warranty deed be transferred to her. So, how did he get notice of what was subsequently asked for? Well, I can't say, I apologize to the court today, but I can't say what was in the documents that she had sent to him that he pitched. But I guess, in all fairness, I can't answer that question, Your Honor. I don't know how he would have gotten notice of that under the circumstances. According to him. Counsel, was there anything that would be memorialized in the pleadings that might be helpful? Or are the pleadings completely devoid of any type of notice to change the nature of the hearing or the relief sought? I apologize, but I hadn't researched that part of the issue. The only issue I was prepared to present today was a question of whether or not his statement that he had not received any kind of notice in this case was sufficient to overcome the presumption that the return of service by the Sheriff's Department would control in this case. I apologize. Okay, we can speak to that issue, Counsel. So, you make an excellent argument with regard to that issue. It seems unlikely, you know, that there was no notice, things were pitched, somebody else came to pick up documents at the office. What do we do with the court's determination when they've made these credibility findings? Help us out. Well, we'd asked the court to return this case. And I guess the start of it would be to ask him to provide credible evidence of that. For example, he was, in fact, living in Chicago at the time and still maintaining a post office box in the city of Peoria. As an aside matter, we know that there's another case that is winding its way through the courts today. In fact, we had asked that this case be returned to the court in Peoria so that we could incorporate evidence and information from that case to show that he, in fact, lived in Peoria at that time. And he may have committed perjury by saying that he lived in Chicago. He was working for another entity in the city of Peoria, maintaining some property for them. And we think that by returning this to the Peoria County Courthouse, we can incorporate information from that case and show that he was, in fact, living in Peoria. In this case, he should have proceeded beyond his uncorroborated testimony that he didn't receive any service. Go ahead. I'm sorry. I was just going to follow up with counsel. Hasn't the court found the affidavit and testimony to be credible? Well, the circuit court certainly did. There's no question about it. That's why we're before you today. But it's strange that without any explanation at all as to how someone else could have accessed his post office box and got the way this thing works in Peoria is that a notice of the fact that there are documents to be picked up at the sheriff's department at the courthouse. Generally is sent to the last known address of the individual who is being served. And somehow someone without explanation got into his PO box, according to him, and took that document for whatever reason to the sheriff's department to get these documents. But there's no explanation. He said no one else had access to his post office box. So in my judgment, the logical conclusion is he is the one that access his own post office box got served. And so it seemed to me that his statement that he had not been served required more information than he was apparently willing to provide to the circuit court at the time. Mr. Jackson, what did he get served with. He got served with notice of the fact that there were problems with the house, the, the fact that the bathroom needed to be repaired the plumbing need to be repaired, all sorts of items related to the condition of the house itself. And that was information that was trying to get to him so that it could be resolved. But now there were subsequent proceedings. Right, this motion for summary judgment, and there was also an agreement for warranty deed. When, I guess, she couldn't make the initial payment, and then they entered into a subsequent agreement. After the initial. No, I don't think there was a subsequent agreement. She, in fact, got a judgment from the circuit court the chief judge that she was entitled to the house and as a result of the fact that he had refused or could not make the repairs necessary to consummate the sale of the house. But I think that's the only thing that he received from the court. Right. Did he ever receive notice that she was asking for that. The warranty. And go ahead. Yes, yes ma'am. He did. There were escrow agents that were involved in this as well and so notice was sent to those escrow agents, which is presumption that it was sent to him as well. But in addition to documents sent to his PO box so it is I believe that he did receive notice that she was requesting that information which actually ultimately led to judge Gorman, given her a judgment that she should be awarded the house free and clear of any further debt to him. Excuse me, counsel. Good morning. Yes, ma'am. It appears to me in her initial complaint, the petition for enforcement of contract terms. The only contract that she references in that document is the. Contract in the repair amendment. She does not include any information as it relates to the agreement for warranty date, or the escrow agreement. Would you concede that. Yes, I would concede that. And then with the filing of the motion for Sudbury judgment. What math, or the default order that that entered by judge Corbin. What method of service come complied at that time was Supreme Court rule 105. Well, the only the only thing available to her was to serve him as through the escrow agents as well as through his PO box, and that was the form of service at the time. She believed at the time, she believed at the time that he was still living in the city of Fiora. She had no knowledge that he would claim that he lived in Chicago and not the city of Fiora. Didn't rule 105 require that notice be sent by registered or certified mail and I know you, you can't do that to a post office box. Correct. I apologize, but I don't know the answer to that question. I'm not familiar with rule 105 at this point in time. I wasn't in the case at that time. And so much of this took place outside of my personal knowledge, and I sort of got into it at the tail end of the case. Okay, thank you. I have nothing further your honor. Very well. Mr. Michler justices, may it please the court. My name is Blake Michler I'm the attorney for the appellee and defendant Aaron war. This case is based on a default judgment that was against my client in July of 2018. Thereafter, within two years of the entrance of the default judgment. The trial court granted the to 1401 petition, and they came to the default judgment for three reasons. One is that the default judgment granted relief and access of the ad damnum clause and the original petition to that there was never a jurisdiction. Over my client, as a result of no service of process, having taken place for both of those reasons, the court determined that the judgment was void and dusty vacated the default judgment. And thirdly, the court determined that my client had a meritorious defense and acted with due diligence. And as a result, granted a third basis for vacating the default judgment. It must be stated that all three of these bases for the trial courts orders are independent. As a result, if this court finds that any fewer than all of the bases are not to be affirmed. This court still must affirm the trial courts grant of my clients to 1401 petition, and the decision to vacate the default judgment. Before getting into the trial courts decision. I want to provide a few facts to help frame these issues. So, going back to February of 2017 the parties entered into a residential sales contract that was for the sale of the house. This was a standard residential sales contract in the city of Peoria, and involved, Mrs. Cahill obtaining financing on her own. Mrs. Cahill was not able to obtain that financing. And as a result, the residential sales contract was terminated, and the parties negotiated and entered into an agreement for warranty be later on that month as an accommodation to Mrs. Cahill. That agreement for warranty be differed from the residential sales contract in that my client was providing essentially the financing to Mrs. Cahill. She was not able to obtain it on her own. The terms of that contract required her to pay $5,000 down at the closing and $600 per month. Thereafter, it's also significant to note that the agreement for warranty deed included no warranties. You know, no right to repair repair amendment, and specifically in paragraph 10 of that agreement for warranty be stated that Mrs McNair had, you know, examine the premises, and she was satisfied as to its zoning and condition. So essentially there were no warranties. With regards to that contract. After the closing on the agreement for warranty be in which Mrs McNair paid $5,000. She made no $600 monthly payments under the agreement for warranty be instead in March of 2017 I believe March 17 of 2017 she filed a petition against my client. Notably that petition was based on the original residential sales contract, which had been terminated by the parties, and it sought relief as noted by the court previously, in which the trial court found based on the, the documents that Mrs McNair had filed regarding payment offsets, and the rest of the record, the trial court determined, you know, the total amount requested was in the amount of approximately $2,000. So, so this brings us to the first reason for the trial court finding that the judgment was boy, and granting the to 1401 petition, which was that the relief granted by the default judgment was it in excess of the petition. Initially filed by Mrs. Cato, as noted that original petition sought money relatively minor monetary damages. It didn't reference in any way the agreement for warranty deed, and then the default judgment was in, which was entered in 2018 granted her the home, the real estate, and specifically if you look to Mrs. Cato's brief. She doesn't make any qualms about the fact that she was granted relief, not only which was the real estate as opposed to what she had initially requested, but that relief. According to her and her brief was granted under the agreement for warranty deed. So we have a petition filed under a residential sales contract relief granted under a warranty. We have a petition which requests total damages which trial court found to be approximately $2,000, and we have relief. That was granted, which involved transfer of real estate. So, in the interim. Mrs. Cato could have amended her pleading to include additional relief, which she did not do all she did was file a motion for summary judgment which is not a pleading. She would have had to follow the rules of civil procedure, as well as Supreme Court rule 105, which requires in addition to filing an amended pleading or a counterclaim. She would have to send notice to Aaron work, which she obviously did not do because she did not file a pleading. And then Supreme Court rule 105 also requires notice that my client could have been defaulted unless he filed his appearance or an answer within 30 days that was not done. Excuse me. Good morning. How do you respond to opposing councils argument that the escrow agents were aware of all that was happening with regard to this litigation. Weren't they agents of the, at least one of them of the defendant. I don't see how that has honestly anything to do with whether or not the relief granted was an excess of the ad damnum clause, specifically the ad damnum clause again requested monetary damages which has nothing to do with the agents. Well, it's not just that there's relief granted in excess it's without notice the other part of this is granted in excess without notice to the defendant. So, that has to do what I'm asking about is the notice part. So, so the notice part of this rules of civil procedure and Supreme Court one of rule 105 are very clear on what notices required. So, you know, first there has to be an amended pleading pleading provided that was never provided that notice has to include information regarding my client being defaulted. That was never provided. I also have to be sent via registered or certified mail. That was never done so I believe the the notice requirements are clearly not met because they're very clear in the Supreme Court rule 105, and there's just no indication that they were there. So let me just ask a follow up related question. The plaintiff asserted at one point, a latches defense in connection with the to 1401 petition. How was the defendant surprised by that defense when in connection with a to 1401 certainly it was the defendant's obligation to show due diligence here so time was an issue. In this case, how was there any surprise. Well, I believe that that the point when the latches defense was initially pursued, you know, we were many months into the lawsuit and only a few days prior to the trial. So it never been presented before, and we were given no notice of that. In addition, outside of the surprise I think the the rules regarding presenting that defense are clear, and that it has to be included as part of the answer which was was not followed in this case. And in addition, you know, they argue in their brief that, you know, they should have been granted the ability to amend their complaint to include the affirmative defense of latches. I believe beyond the previous issues that I just stated. This is a new issue which was not presented at the trial court, because when presented with the opportunity to, you know, file a motion or request an amendment to the complaint to include the affirmative defense. The Council for Mrs chaos specifically denied making that request and stated that they didn't want to push the matter of latches, they didn't want to pursue it they didn't want to pursue amending the complaint. And as a result, I don't believe that that issue should be dealt with now. So, in a little bit of a separate issue but going back to address the issues of of service and I understand the trial court made the finding and made those credibility determinations, but other than your clients statement that he simply was not served what other evidence of that. Did he present to the court, other than his own statement. Yes. And to begin with regards to service of process, it must be understood that that's separate and apart from the meritorious defense argument and it's also separate from him apart from the ad damn them clause. So even if the court finds that he did not successfully impeach the affidavit of service in this case, I believe the court should still uphold the trial court's decision. That being said, I think that the the law very clear is very clear in terms of what is required to impeach a service of process, or an affidavit of service, which is that it has to be done by clearing convincing evidence, and we have case law kind of outlining what's required, you know, as you're kind of getting at. It's not sufficient to simply have an individual's testimony that's uncorroborated. On the other hand, we have cases for example Robinswood West Incorporated be Kramer, in which case, I believe it was the first appellate district ruled that there was sufficient corroboration. When we had an individual's testimony, I believe some affidavits, plus a single hotel bill showing he was out of state at the time, it was noted by that court that that was not an authenticated hotel bill. So, you know, there wasn't a lot of, you know, support for that being an actual hotel bill that he had actually incurred. So all that being said, I think there is sufficient corroboration in this case to support the affidavit and testimony of Mr. Most of that comes from honestly the record, which obviously is corroborated, and for the most part, a lot of the facts involved with the corroboration are undisputed by the other side. So for example, my client says that he never received the mailing from the Sheriff's Department. And as a result, obviously never even knew to go in to accept service of process. Well, in this case, it's a little bit unique. Because prior to the Sheriff's Department sending out that notice, there was almost five months of case where there was no service of process, no reason for my client to know, you know, that there was an ongoing civil case against him. And as Mr. Attorney Jackson noted, his client was sending out documents to my client. So I believe that the record would support in March of 2017, she filed a petition. In May of 2017, she sent out a document that she called a notice of payment offset. Later on in May, she sent out more documents, and we're not even really sure what all these documents are. In June, she sent out a, she re-sent out, according to her, additional documents which returned undelivered. And then in July, she sent a second payment offset authorization again in July. So we have five months of documents being sent out and really, you know, no action in response by my client, no indication that he had ever actually looked at these. And I believe Donald Jackson's, or Attorney Jackson's, you know, argument supported the fact that, you know, he wasn't reviewing anything. And then come August, months into this case, the affidavit provides that, you know, he was sent out a letter on August. And within, I believe, approximately nine business days, he accepts service process. So I believe those facts of him not responding to the mailings that went out to him corroborate his story that he didn't get the mailing. Excuse me, sorry. Was there anything that you are presenting today to suggest that the affidavit of service was was facially deficient in any way? So, you know, additional support and corroboration for the fact that this didn't occur. And I believe that the court needs to look at all of these facts within context and rely on the trial courts finding a fact and, you know, judgment of the witnesses. But another bit of corroboration is the fact that the return of service only provided that it was a male that was African-American of undetermined age that accepted the service. You know, my client is an African-American male, but that really doesn't provide much information as to who exactly accepted service in that case. So, again, that's additional support. His affidavit and testimony by he was living out of town. The fact that he had a P.O. box, again, corroborates this because he didn't have a residential address within the area to accept any type of service of process. And then his general actions in this case. So his testimony was that he never stepped foot inside the courtroom until he became aware that the house was transferred and he filed his 2-1401 petition. And, you know, the facts of the case, both before and after this alleged service take place, show he never was in the courthouse. And then the affidavit of service says that, well, then, you know, in response to this mailer, which is shocking, he received, he went to the courthouse and accepted service of someone. So, you know, any particular fact might not in and of itself provide enough corroboration of my client's testimony to overcome by clear and convincing evidence the affidavit of service. But I believe if you take everything within context and again, rely on the trial courts determinations with regards to, you know, the witness testimony, we at least have as much corroboration and I believe more than was found to be sufficient. The final justification for the court in vacating the default judgment was that my client was found to have acted with due diligence and had a meritorious defense. This is a little bit different than the other 2 justifications as it does not result in a void judgment. But again, does justify the court in vacating the default judgment. In this case, the meritorious defense, I think, is almost without question. I don't believe the other side has really provided much argument regarding my client not having a meritorious defense. Again, the entire petition was based on a contract that was terminated by the parties. It didn't have anything to do with the actual agreement, the agreement for warranty. So, just looking at that basis alone, there are certainly facts that could be presented that would lead to a meritorious defense to the cause of action presented by Mrs. Cato. In addition to the diligence of my client, it must be noted that the 214-01 petition was filed within two years of the default judgment being entered. And he provides in his testimony and in his affidavit that he filed that immediately after becoming aware that the property had been transferred. So, he found out the property was transferred, he acted immediately. And I do believe that even if this court was to not determine the service or was to determine that he did not successfully impeach service of process, I think the service that he did receive, and this is kind of piggybacking off the court's damnum justification and analysis, that what he was served with didn't provide him notice of what he was potentially going to lose if he didn't step into the court case. So, for those reasons, I believe that he also acted with due diligence. So, that justification is met and this court should, as a result, affirm the trial court's ruling, not only on the basis of the add damnum clause, or the relief granted being in excess of that clause, but also because service of process was not effectuated, and as a result, the court did not have jurisdiction over my client, and because even absent those two reasons, my client acted with due diligence and had a meritorious defense. Very well, thank you, counsel. Well, unfortunately, most of what Mr. Mishler testified to, I was not in this case at that time. I got into it relatively late. And so, I have little information to rebut what he has to say. However, this case is basically on the question whether or not he was actually served in the case, and what's still unanswered is, how did anyone else have access to the PO box where the service of process information was sent? If he didn't get served in this case, somehow those documents made their way to the sheriff's department, and Mr. Ware claims he has no knowledge of anyone else having access to his PO box, but someone did have access to it. And we think it's Mr. Ware, and he was the one that went to the sheriff's department, and he was in fact served. And so, we had asked the court to return this case to the circuit court in Peoria so we can get to the issues based on the merits of the case. Thank you. Okay, seeing no questions, the court will take this matter under advisement, and we will now stand on recess. Thank you.